CHICAGO BRIDGE & IRON COMPANY, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION,

and

John T. Dunlop, Secretary of Labor, Respondents.

No. 75–1163.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1975.

Decided May 10, 1976.

William A. Cromartie, Jeremiah Marsh, Lester Asher, Jonathan T. Howe, Charles L. Michod, Chicago, Ill., D. Lynn Whitt, Oak Brook, Ill., for petitioner.

Michael H. Levin, Robert K. Salyers, U. S. Dept. of Labor, Washington, D. C., for respondent.

Ira J. Smotherman, Jr., Atlanta, Ga., for amici curiae.

Before HASTINGS, Senior Circuit Judge, SWYGERT, Circuit Judge, and PERRY, Senior District Judge.[1]

SWYGERT, Circuit Judge.

This appeal presents the question of whether the failure of a Compliance Safety and Health Officer to meet with Chicago Bridge & Iron Company supervisors or its employee representatives and afford them an opportunity to "walkaround" an inspection of the worksite at which the company was a prime contractor, as required by section 8(e) of the Occupational Safety and Health Act,[2] was grounds under the statute for voiding the citations issued to the company as a result of that inspection. The Administrative Law Judge vacated the citations because the walkaround right had not been extended, but his decision was reversed in an opinion by the Occupational Safety and Health Review Commission. The case is before this court pursuant to section 11(a) of the Act on petition of Chi-

---

1. The Honorable Joseph Sam Perry, United States Senior District Judge for the Northern District of Illinois, is sitting by designation.

2. 29 U.S.C. §§ 651, et seq., section 8(e), 29 U.S.C. § 657(e) provides:

   [s]ubject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace . . . for the purpose of aiding such inspection. Where there is no au-
thorized employee representative, the Secretary or his authorized representative shall consult with a reasonable number of employees concerning matters of health and safety in the workplace.

On the basis of this provision, the Administrative Law Judge concluded that the Act did not, except in cases where there were no employee representatives on the premises, permit the compliance officer to delegate his duty with respect to giving an opportunity to an employer representative to accompany the inspection tour, OSHO Doc. No. 224 p. 6.

cago Bridge & Iron for review of the Commission's order.[3]

The worksite involved in this case was the nuclear power plant under construction by Commonwealth Edison Company at Zion, Illinois.[4] Chicago Bridge & Iron was a prime contractor on the project, but was not contacted by the compliance officer prior to his inspection. The compliance officer instead relied on the project manager for Commonwealth Edison to coordinate a group of employees and employers for the purpose of accompanying him on his inspection tour. The company maintains that the compliance officer during his discussion with the project manager requested that only representatives of Commonwealth Edison, Walsh Construction Company, and a mechanical contractor be present in the inspection party. The Secretary of Labor, on the other hand, states the compliance officer had specified that the selection of employer and employee representatives would be subject to his approval and had understood from his discussion with the Commonwealth Edison project manager that all the employers at the site would be informed of the selection process and the pending inspection. The inspection party finally chosen was composed of representatives of the two largest contractors on the site who had primary control over the entire project and who held themselves out as representing all the employers on the site and employees, mostly shop stewards, who had been drawn from the membership of a union safety committee which had been previously organized to handle safety problems for all on-site employees. The contingent was approved by the compliance officer and the inspection undertaken.[5]

The inspection took more than five days to complete. Twenty-three employers received citations for violations of the Act. Chicago Bridge & Iron was cited for eight nonserious violations, but was not subjected to any penalty. The company was told to correct the violations within twenty days. When it chose instead to contest the citations, the Secretary filed a formal complaint. The company moved to dismiss on the grounds that there had been no walka-round right afforded to it or its employees as required in the Act.

Chicago Bridge & Iron has argued that the failure of the compliance officer to ensure that this right was offered to it and its employees during the inspection of the worksite rendered the citations void *ab initio*. In support of this argument, it notes that the terms of the statute are mandatory—the representative *shall* be given an opportunity to accompany the Secretary; that this particular provision in the Act provoked a great deal of conflict, evidenced in the legislative history, which was resolved by adopting the absolute language; and that the Secretary's own regulations recognize the right as mandatory.[6]

3. Section 11(a), 29 U.S.C. § 660(a), reads in pertinent part:
    . . . may obtain a review of such order in any United States court of appeals for the circuit in which the violation is alleged to have occurred or where the employer has its principal office, or in the Court of Appeals for the District of Columbia Circuit, by filing in such court within sixty days following the issuance of such order a written petition praying that the order be modified or set aside.

4. The worksite covered twenty-six acres and over fifty subcontractors were involved in the project at one time or another. The officer arrived at the site initially to investigate a report of two fatalities, as authorized by 29 C.F.R. § 1904.8 (1974). Subsequent to this inspection it was determined that a routine inspection of the safety conditions at the site should be conducted. Chicago Bridge & Iron had seven employees and a company representative at the site.

5. A second compliance officer was, at the same time, collecting information necessary to complete the inspection forms. He testified that he had informed all employers with whom he left OSHA literature of the pending inspection.

6. The regulation relied on reads:
    A representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Compliance Safety and Health Officer during the physical inspection of any workplace for the purpose of aiding such inspection. A Compliance Safety and Health Officer may permit additional employer representatives and additional representatives authorized by

The company also argues that there are policy reasons why a denial of the walkaround right should result in the citations being voided. It asserts that the adequacy of the inspection will be endangered if the right is not afforded to employers and their employees' representatives, and the potential for on-the-spot resolutions of actual disputes will be foreclosed. It also predicts that unnecessary conflict will arise if employers are excluded from the site during the inspection since if they do not observe the violations they will be less likely to voluntarily make the necessary corrections without inducement from a citation. The company further argues that to allow the Secretary or his agent to bypass the right will permit the inspection process to operate on employers in an inherently prejudicial manner and will allow or encourage discriminatory practices by permitting the exclusion of employer representatives although employee representatives are included in the inspection parties.[7]

The Secretary has countered these arguments by asserting that there has been substantial compliance with the provision of the Act establishing the walkaround right. He argues that the failure to include the representatives of Chicago Bridge & Iron and its employees was irrelevant on the facts of this case in that no prejudice has been demonstrated by the company as a result of the oversight. The Secretary's argument focuses on the "preventative purposes" of the Act and concludes that strict adherence to the walkaround right in cases which involve huge construction sites with dozens of contractors and subcontractors will retard the enforcement procedures provided by the Act.[8] The Secretary's argument relies in large part on his assertion that the walkaround right was incorporated in the legislation in order to aid his inspections of the worksites, *not* to hinder them as would be the result should the compliance officer have to include representatives from all the employers involved in projects like the nuclear power plant site in the instant case.

The Secretary then urges this court to construe the "shall" in section 8(e) as *conditional* by looking to the legislative history. He does not suggest that the language of the statute is directory, but rather attempts to reframe the issue by arguing that there is no absolute right conferred by the provision the denial of which would deprive his

---

employees to accompany him where he determines that such additional representatives will further aid the inspection, (29 C.F.R. § 1903.8(a)),

and, under the definition section of the regulations:

"shall means mandatory," (29 C.F.R. § 1926.-32(p)).

The company also argues that the field manual issued to OSHA inspectors recognizes the mandatory nature of the walkaround right:

Section 8(e) of the Act and 29 C.F.R. Section 1903.8 of the compliance regulations require that a representative of the employer and a representative authorized by the employees shall be given an opportunity to accompany the CSHO during the physical inspection of any workplace for the purpose of aiding such inspection. Compliance Operations Manual ch. V(F)(1)(a) (1971),

as does the notice form used by the Secretary to inform employees of their rights and obligations under the Act:

Inspection: The Act requires that a representative of the employer and a representative authorized by the employees be given an

opportunity to accompany the CSHO inspector for the purpose of aiding the inspection. OSHA No. 2203 (1973).

Every covered employer is required by Regulation 29 C.F.R. § 1903.2(a) to post the notice so that his employees may see it.

7. Chicago Bridge & Iron has foregone the question, initially raised before the Review Commission, as to whether the Secretary fulfilled the burden of proof placed upon him by the Act, that is, whether he had demonstrated that the company's employees were in fact exposed to the alleged violations. The Administrative Law Judge had disposed of the citations on remand from the Commission's decision on the mandatory/directory nature of section 8(e) on the basis that the Secretary had not met this burden. This conclusion was overturned in a second petition to the Review Commission.

8. The Secretary's major concern seems to be that if every employer and his employees were afforded a walkaround right at such construction sites, the resulting inspection group would be of an unmanageable size.

office of *jurisdiction* to issue citations.[9] The Secretary argues that if there is substantial compliance with the walkaround provision and no prejudice has been demonstrated by the employer, the citations should stand.[10]

The Secretary in his attempt to reframe the issue before this court deviates from the reasoning and conclusions reached by the Review Commission. The Commission's decision indicated that the majority believed the walkaround right to be directory. The Secretary has argued on appeal that the Commission actually rested its decision on the fact that there was no prejudice to the company in this case and that there had been substantial compliance with the terms of the statute. He supports this argument by referring to that part of the Commission's opinion which focuses on the failure of Chicago Bridge & Iron to demonstrate that any prejudice resulted because of the failure of the compliance officer to extend it the walkaround right.

■ In view of the clear language of the statute which is given additional force by the principle of administrative law which dictates that where an administrator must follow the rules promulgated pursuant to the authority of the statute he is charged with enforcing, *Madden v. Int'l Hod Carriers*, 277 F.2d 688 (7th Cir. 1960); *Madden v. Int'l Organization*, 259 F.2d 297 (7th Cir. 1958), we can reach no other conclusion, but that the dictates of section 8(e) of the Act are mandatory. In addition, although when the language of a statute is clear it is not necessary to resort to other material for interpretation, both parties have extensively referred to that portion of the legislative history which sets forth the dispute concerning inclusion of the walkaround right in the Act. The right was sought by employee groups and was granted to employers in the interest of fairness.[11] Such a right should not be eroded by holding that the statute is merely directory.

■ Our conclusion that the walkaround provision is mandatory does not, however, dispose of the matter before us. The Secretary has argued that there has been substantial compliance in this case with the dictates of section 8(e) and in addition there has been no prejudice to Chicago Bridge & Iron as a result of the inspection. We agree, that on the facts of this case, the citations should not be voided.

Several elements in the situation before us indicate that there has been substantial compliance with section 8(e). We note, for example, that either immediately preceding or at the initiation of the inspection tour, a compliance officer talked with the representative of Chicago Bridge & Iron and

**9.** The Secretary in a footnote in his brief defines the distinctions he thinks are appropriate between the effects of noncompliance with mandatory, directory and jurisdiction requirements:

> We additionally note that as a matter of analysis such procedural requirements may be divided into three categories: *jurisdictional*, non-compliance with which will justify dismissal regardless of whether any prejudice arises; *mandatory*, which are generally meant to be effectuated but will not result in reversal unless prejudice from non-compliance is shown; and *directory*, which will not result in reversal even if prejudice is shown.

**10.** There were amicus curiae briefs filed in this case all urging this court to find that the walkaround right was mandatory. The brief of the Chicago and Cook County Building and Construction Trades Council set forth its views as the union representing many construction workers on the mandatory/permissive question concerning the walkaround right. The Council's brief evidenced its concern if the decision of the Review Commission designating the right as "permissive" were allowed to stand, the rights of employees would be relinquished also. This argument does not address the Secretary's position on appeal which is *not* that the statutory language is not mandatory, but rather that there has been substantial compliance with that standard and that there has been no prejudice demonstrated by the company as a result of not having its representatives accompany the compliance officer. The other amicus briefs are from various employers' associations and the arguments are basically the same as those made by Chicago Bridge & Iron in its principal brief.

**11.** See: *Legislative History of the Occupational Safety and Health Act of 1970*, U.S. Gov. Ptg. Office, Washington, D. C. (June 1971), and F. Wallick, *The American Worker: An Endangered Species* (1972).

informed him that an inspection was in process. At that time the company representative was provided with a copy of the Act and an informational pamphlet explaining it. Although it may have been more desirable for the compliance officer to verbally inform the representative of the rights which the company could exercise at that time, the material supplied contained all the information that an employer needed to know in order to assert his walkaround right under the terms of the Act. The company did not subsequently request that its representative be allowed to accompany the tour, nor did it ensure that a representative would be present at the time of the inspection. The company was also informed, as were all the employers, by the project manager for Commonwealth Edison of the fact that an inspection was underway and of the constituency of the inspection party, but it did not request inclusion of its representative at that time.

■ We agree with the company that it is desirable that employers' representative be present when inspections of their work areas are conducted.[12] We do not agree, however, that the absence of a formalized offer of an opportunity to accompany the compliance officer on his inspection renders the citations for violations observed void *ab initio*. This result we believe would frustrate the purpose of the Occupational Safety and Health Act of 1970 which is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to pre-

serve our human resources." 29 U.S.C. § 651. As recently expounded by the Fifth Circuit in a decision which upheld the Review Commission:

[E]ven if the Secretary conducted an illegal inspection (which we assume only for argument's sake), under the circumstances here these violations cannot operate to exclude evidence obtained in that inspection when there is no showing that the employer was prejudiced in any way . . . [the company] would have us adopt an exclusionary rule which would exclude all evidence obtained illegally no matter how minor or technical the government violation, and no matter how egregious or harmful the employer's safety violation. This we refuse to do. The manifest purpose of the Act . . . militates against such a result. *Accu-Namics, Inc. v. OSHC and Dunlop*, 515 F.2d 828 (5th Cir., 1975).

The court suggested that it was able to reach this result in spite of the statutory language because there had been no showing of prejudice made by the employer. The court did not reach the question of whether the provision of section 8(e) was mandatory or directory.

We agree with so much of the *Accu-Namics* opinion as relates to the manifest purpose of the Act and the inadvisability of a policy which would automatically void citations because of procedural or technical violations on the part of the Government. This result, we believe, is compelled particularly in the circumstance of large on-site

---

**12.** Chairman Moran, in his dissent from the order of the Review Commission overturning the Administrative Law Judge's vacation of the citations, used the following concrete example of what can occur if the inspection is conducted without the presence of the representatives of the employer and his employees. He wrote in his dissent in this case that the significance of the walkaround right:

is amply demonstrated [by a case] where the issue involved a dispute over whether the diameter of a rope was ⅝ or ¾ or one inch. . . . [As the Administrative Law] Judge . . . said: "The circumstances of this case call for the issuance by this Commission of an admonition to the parties that they make an effort in the future to avoid expen-

sive and confusing issues such as the one presented herein. If the compliance officer and the superintendent on the job would both make it a point to verify immediately and in each other's presence such simple matters as the diameter of a wire rope, much wasted time and expense could be avoided by all concerned. More important than that, such a course would also avoid the ill feeling that cannot but result from the resolution of such an issue by litigation."

The participatory role envisioned for employers and employees by the Act can thus, "aid . . . the inspection" in allowing the resolution of such factual disputes on the site and avoiding the expense of trying such issues and should be protected.

inspections involving multiple contractors. Alternative methods of inspection of such sites have been suggested, but it is not difficult to envision occasions where the technical requirements of the Act would not be met even under such proposals. If our holding today was that citations issued in violation of such procedures result in *per se* procedural dismissals, the degree of actual compliance under the Act or a consideration of the attempt by the investigating officer to comply would be irrelevant.

Chairman Moran, the dissenting member of the Review Commission, and Chicago Bridge & Iron have suggested that it would have been both simple and expedient for the compliance officer to afford all on-site employers the opportunity to accompany him on his tour of that part of the site at which their employees were working.[13] The suggestion was that the representatives of the employer and its employees should be asked to join and leave the inspection party as it passed through the areas in which the particular employer is located. If this procedure were to be followed, it would avoid the problem anticipated by the Secretary of trying to conduct an inspection with a group of unmanageable size. This method would also have permitted the compliance officer to conduct the inspection in a manner which would not have necessitated his notifying employers so far in advance as to interfere with his viewing the work areas as they usually exist. Although this may in fact be a desirable method for conducting such inspections, if

citations issued without strict adherence to procedural provisions of the Act were void *ab initio*, the result of an inspection citation issued after the completion of such a tour in which certain employers were not available at the site—either because they did not know of the inspection or because the situation was such that they were called to another location—would also be void. If the compliance officer wanted to ensure that his citations would not be flawed, he would have to either reschedule the inspection of that employer's part of the site or suspend the progress of the inspection of the site until the return of the employer's representative.

On the basis of the foregoing discussion, we hold that when as here there has been substantial compliance with the mandate of the Act in regard to the granting of a walkaround right and the employer is unable to demonstrate that prejudice resulted from his non-participating in the inspection, citations issued as a result of the inspection are valid.[14] The company here has not demonstrated any concrete prejudice to its defense by the exclusion from the inspection party.[15] The on-site representative of Chicago Bridge & Iron was informed of the pending tour and given literature which set forth the statutory directives. There was no attempt on the part of the company to see that their representative was included on the tour despite this information and any additional warning that attended the Commonwealth Edison's rep-

**13.** The facts of this case illustrate how the walkaround right could have been profitably employed by the compliance officer. The violations cited to Chicago Bridge & Iron were for conditions which existed inside a large containment vessel. The company had initially argued before the Administrative Law Judge and the Review Commission that its employees were not exposed to the cited conditions since they were merely closing an access opening to the vessel. A discussion on the site with the company's representatives and employees may have resolved this dispute. We note, however, that this objection was not presented on appeal in view of the holding in *Underhill Construction Corp.*, 513 F.2d 1032 (2d Cir., 1975), which indicated that actual exposure to the cited conditions was not necessary. The test set forth in

that decision was whether employees had potential access to the conditions.

**14.** This case does not present a situation where there has been a violation of the Fourth Amendment in conducting the inspection. Nor has Chicago Bridge & Iron suggested to this court that the compliance officer's tour violated that amendment.

**15.** On the question of prejudice, we note that under the statute the Secretary bears the burden of proof in the citation on appeal process. The company has not attempted to demonstrate that this burden has not been met, nor has it offered evidence to demonstrate prejudice.

**378**

resentatives contact with employers on the site.[16]

The order of the Occupational Safety and Health Review Commission is affirmed and the citations will be enforced.

16. We need not now reach the question of whether either the failure of the company to demonstrate concrete prejudice or the ability of the compliance officer to show his substantial compliance with the walkaround right would alone be sufficient to allow this court to affirm the Review Commission's citations. Both factors are evident in this case.